UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MACK AL GREEN,

Petitioner,

v.

FEDERAL BUREAU OF PRISONS, R.L. STIFF, Warden, WENDY J. ROAL, Administrator, PAM AGRIMSON, Case Manager, D. TOMCHE, Unit Manager, KATHERINE HAWK SAWYER, Director of BOP, and R. LAMMI, Counselor,

Respondents.

CIVIL NO. 00-819 (JRT/JMM)

REPORT AND RECOMMENDATION

Petitioner Mack Al Green filed a Petition for a Writ of Habeas Corpus pursuant to the provisions of 28 U.S.C. § 2241 [Docket No. 5]. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B). Petitioner appears pro se; Jeffrey S. Paulsen, Esq., Assistant U.S. Attorney, appears for Respondents.

Upon the following Findings of Fact/Report, it is recommended that Petitioner's Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 5] be denied, and the Petition be dismissed with prejudice.

**FINDINGS OF FACT/REPORT**

**Background**

Petitioner is currently in the custody of the Federal Bureau of Prisons and is incarcerated at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca"). On July 10, 1998 he was sentenced to 70 months confinement followed by four years

FEB 06 2001

supervised release, pursuant to his plea of guilty to the charge of Distribution of Cocaine Base in violation of 21 U.S.C § 841(a)(1). [Docket No. 13, Decl. of Deborah A. Locke, ¶ 3]. Petitioner is housed at FCI-Waseca. His projected release date is November 22, 2002. [Id. at Ex. 1].

When an inmate is assigned to FCI-Waseca and other federal institutions, the institution makes a determination of the security and custody designation appropriate to that individual. [Docket No. 14, Decl. of John M. Junk, Ex. 3]. In doing so, the institution uses BOP Program Statement 5100.07, (formerly 5100.06), Security Designation and Custody Classification Manual. Prison officials review official documentation of the prior criminal history of the inmate, which includes the Presentence Investigation Report ("PSI").

In this case, the official documentation of Petitioner's prior criminal history included a pending charge for Receiving Profit Derived from Prostitution that involved a minor. This information was provided to FCI-Waseca officials in a PSI report dated June 3, 1998, which was created for purposes of Petitioner's federal sentencing.

Based on the information provided in Petitioner's PSI, FCI-Waseca officials assigned to Petitioner a Public Safety Factor ("PSF") as a Sex Offender. [Docket No. 14, Junk Decl., ¶ 2.] The PSI itself is Exhibit 2 to the Junk Declaration, Docket No. 14. It clearly indicates that Petitioner encouraged the use of a minor for prostitution purposes.[1]

---

1

The PSI includes this information about Petitioner's conduct: "[On October 20, 1997] Defendant told the CI that he would provide a juvenile prostitute named P.J. and would drive the CI and P.J. to a hotel in Minnetonka. During a taped conversation with the CI, the Defendant described a number of sex acts the girl would perform for the undercover detective for a $500 fee. Later that same day, detectives observed the Defendant arrive at the hotel in Minnetonka with two females as planned. [A 16-year old girl was one of the females]. In a taped statement, [the 16-year old girl] stated that earlier that same day the Defendant contacted her about coming out to Minnetonka. The Defendant picked up [the 16-year old girl] and drove her to the hotel where she was to have sex and would later be paid by the Defendant."

After the PSI was created, Petitioner made no objection to the Report. [Docket No. 14, Junk Decl., Ex. 2, p. A-2].[2] See also Fed. R. Crim. P. 32(b)(6)(B). Accordingly, at the federal sentencing hearing on the charge underlying the instant case, the District Court adopted the factual statements in the presentence investigation report as its own findings of fact. Neither Petitioner nor his counsel objected. See United States v. Green, File No. 97-340, (D. Minn.), Doc. No. 48, July 10, 1998 Sentencing Transcript, pp. 3-4, filed Sept. 24, 1998.

At the time the PSI was created in June, 1998, Defendant had not yet pleaded guilty to the state charges underlying this report. The State of Minnesota had originally charged Petitioner under Minnesota Statute § 609.323, Receiving Profit Derived from Prostitution, Subdivision 1a. That subdivision criminalizes receiving profit from prostitution of an individual "at least 16 but less than 18." See Minn. Stat. § 609.323, subd. 1a (1998). At his Plea and Sentencing on July 15, 1998, the charge was amended to charge a violation of Subdivision 2 of the same statute. Subdivision 2 says nothing about the minor status or age of the prostituted individual.

---

2

In his Reply Memorandum, Petitioner asserts without evidentiary citation: "The petitioner requested his counsel to object to petitioner's pre-sentence investigation report (see Exhibits F, G) but counsel did not." This statement is contradicted by the PSI itself, and by the transcript of the Sentencing hearing, at which Petitioner stood mute when the Court noted that no objection had been filed to the PSI. See United States v. Green, File No. 97-340, (D. Minn.), Doc. No. 48, July 10, 1998 Sentencing Transcript, pp. 3-4, filed Sept. 24, 1998. We also note that Petitioner has moved to vacate the sentence in that action under 28 U.S.C. § 2255 alleging ineffective assistance of counsel. [Docket No. 57.] The alleged failure of counsel to object to the PSI is not mentioned in that claim. In any event, that issue is not raised by the pleadings in the case presently before the Court.

**Petitioner's Contentions**

This Court has a standard form for a Petition seeking Habeas relief under 28 U.S.C. § 2241, which was properly utilized in this case. On that Petition, Question 9 asked Petitioner to "state concisely the grounds on which you base your allegation that you are being held in custody unlawfully." As Ground 1, Petitioner responded to this question by stating that "respondent has denied the Petitioner due process by labeling the Petitioner as a 'sex offender' when the Petitioner has never been convicted of a sexual offense." He also alleges that he was denied due process because, he alleges, "respondent has not provided the Petitioner with a hearing so that he could present evidence on his behalf or call witnesses, thus violating certain liberty interests." He asks that the District Court order the removal of the Sex Offender PSF designation and that a memorandum regarding removal of the designation be placed in his prison file. [Docket No. 6, Memorandum in Support of Petition, p. 13.]

Respondent urges that the Petition be dismissed with prejudice as to this asserted ground for a number of reasons, procedural and substantive. As to the merits of the designation, Respondent states that the regulations authorize the assignment of a sex offender PSF without regard to the statute under which the conviction was obtained, where the PSI clearly indicates facts showing that Petitioner engaged in the conduct on which the sex offender designation is based.

As Ground 2 for relief, Petitioner asserts that he is denied Equal Protection of the Law. He claims that he has been discriminated against because he is Islamic, and that Christians receive better treatment. As Ground 3, Petitioner states: "See attached: Memorandum of Law." Although the basis of this ground is not altogether clear, it appears

to assert that the classification violates the Ex Post Facto Clause of Article I, § 9 of the United States Constitution. [Docket No. 6, Memorandum in Support of Petition.]

## I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The BOP has an administrative review program through which inmates may seek formal review of any issue which relates to any aspect of their confinement. See 28 C.F.R. § 542.10 et seq. FCI-Waseca staff notified Petitioner of his PSF as a Sex Offender on March 4, 1999 with a Sex Offender Registration and Treatment Notification document which he was asked to sign. The document explained that the classification was based on his "prior conviction of sexual offense." [Docket No. 7, Ex. L, Sex Offender Registration and Treatment Notification]. Petitioner refused to sign the document as requested. [Id.] Soon after, on March 10, 1999, he filed an Informal Resolution Attempt with P. Agrimson, his Unit Team manager, contesting his PSF. [Docket No. 7, Ex. F.] He wrote:

> Mrs. Agrimson I have anothe [sic] problem. I received a letter from Minnesota Dept. of Corrections on a case which took place after my federal sentence. Stated the Dec. 5, 1998, [letter] [sic] Pursuant to Minnesota Statutes section 609.165, all of my Civil Right [sic] and full Citizenship, Right to vote and hold Public Office are restored. According to Minnesota Statute I should not be place [sic] on no Public Safety Factor. Furthermore, that state case have nothing to do with my federal case.

[Docket No. 7, Ex. F, Informal Resolution Attempt dated 3/10/99.] Agrimson responded: "This PSF will remain applied, as he was convicted of a prostitution offense involving a minor." [Id.]

In July, 1999 Petitioner sought removal of the PSF through the BOP's administrative remedy process. His use of the review process is set forth in the exhibits

to the Petition. [Docket No. 7, Ex. C, D and E.] The first use of the formal BOP procedure was Petitioner's complaint to Warden Stiff, received on July 26, 1999, Petitioner wrote:

> I am writing to you concerning a Public Safety Factor that has erroneously been placed on me. My team is using the P.S.I., which was written prior to the outcome of the State case, to levy the Public Safety Factor against me. I was originally charged with a violation of State of Minnesota statute 609.323 Subdivision 1(a), however, this was amended to a violation of Subdivision 2. A violation of Subdivision 1(a) would warrant a Public Safety Factor, but a violation of Subdivision 2 does not. I have presented the transcripts regarding this to Mrs. Agrimson [Unit Manager] but she refuses to change the status of this Public Safety Factor. Also, this statute 609.323 has been repealed. I have attached the relevant documents. Please assist me.

[Docket No. 7, Ex. C, Inmate Request to Staff Member]. Petitioner attached the July 15, 1998 Plea and Sentencing Transcript, a copy of Minn. Stat. § 609.323 (1998), and the Minnesota Department of Corrections letter dated December 5, 1998, restoring his civil rights. [Docket No. 13, Locke Decl., Ex. 2].

Warden Stiff responded to the initial Complaint. [Docket No. 7, Ex. C, Staff Response to an Inmate Request]. He explained that the PSF was correctly applied based on the information provided in the PSI. He stated:

> According to your PSI, the offense conduct involved you making arrangements for a minor female to perform various sex acts with a man, for $500.00. In accordance with the Security Designation and Custody Classification Manual (P.S. 5100.06),[3] the sex offender public safety factor was applied when you were initially designated to this facility. . . . [A] conviction is not required for application of this PSF, if the PSI clearly indicates that the following behavior occurred in the current offense or prior criminal history: encouraging the use

[3] Now renumbered 5100.07.

> of a minor for prostitution purposes. Therefore, regardless of the statute of conviction, or if the statute of conviction has been repealed, the PSF is warranted in this case.

Petitioner next brought his complaint to the BOP's Regional Office. Petitioner's exhibits do not include his middle-level appeal to the Regional office, but his Central Office Appeal makes reference to that step in the process. [Docket No. 7, Ex. D, Central Office Administrative Remedy Appeal ("In regard to the response of my Unit Team Case Manager from my BP-8 filing, Mr. R. Stiff, Warden, from my BP-9 filing and Mr. G.L. Hershberger, Regional Director, from my BP-10 filing, I submit the following as my Central Office Appeal.")].

Petitioner then appealed to the BOP's Central Office, alleging that a PSF as a Sex Offender has been erroneously applied. In his Central Office appeal he wrote:

> A Public Safety Factor has been placed on me unjustly which is causing me undue hardships due to the fact that I am being excluded from participation in certain programs and also deemed ineligible for transfer to a lessor security facility as a direct result . . .. They have gone further to tell me that I have to sign some forms and upon my release I must register in the city of my residence as a sex offender. I contend that there is no sound basis for this action to be taken against me. I have never been charged with any sexual misconduct. I was convicted of "Receiving Profit Derived From Prostitution." Program Statement 5100.06 ¶ f(3) specifically [sic] is in reference to one participating in an illegal act of intercourse or attempted intercourse. I further add that the Statute in which I was charged and convicted under in the state of Minnesota has been repealed. . . the state has also restored my Civil Rights in that cause.

[Docket No. 7, Ex. D]. Petitioner asked that the PSF classification be removed from his file and a memorandum regarding the removal be placed in the file. On August 26, 1999, Petitioner's Central Office Appeal, the final level of internal review, was denied with the

following explanation:

> Our review reveals the responses of the Warden and Regional Director thoroughly address the issue you raise. This issue is left to the discretion of the Warden and the Regional Director. . .. [Program Statement 5100.06] states that the Sex Offender PSF shall be applied when an inmate's behavior in the instant offense or prior history includes any sexual act or contact that is aggressive or abusive in nature. You were convicted of Receiving Profit Derived from Prostitution on July 15, 1998. The offense conduct indicates this crime involved a minor. Therefore, we find staff have appropriately applied the PSF for Sex Offender. Your appeal is denied.

[Docket No. 7, Ex. D].

Petitioner wrote again to Warden Stiff on January 27, 2000, asking for "due process" and "an opportunity to be heard before being classified as a sex offender." [Docket No. 7, Ex. E, Inmate Request to Staff]. The Warden responded, "this request is repetitive in nature and has been previously addressed." [Id.]

Petitioner must exhaust the BOP's available administrative remedies before seeking habeas relief. See Leighnor v. Turner, 884 F.2d 385, 388 (1989); Willis v. Ciccone, 506 F.2d 1011, 1014-15 (8th Cir. 1974). Respondents concede that Petitioner has exhausted his administrative remedies as to Ground 1, his due process claim. That claim is thus properly before the Court.

Petitioner acknowledges that he has not exhausted administrative remedies as to the second and third grounds for his Petition. (Petitioner's allegation in Ground 2, is that prison officials' refusal to grant a waiver of the PSF violates equal protection; Ground 3 contends that the PSF violates the ex post facto clause). These grounds may not be considered by this Court as Petitioner has not exhausted this complaint in the

administrative review process. In Willis, the Eighth Circuit made the following statement regarding the usefulness of the administrative review process: "it may well benefit prisoners to seek administrative relief first since this may be both a more expeditious and advantageous source of relief from unlawful action. . . when proper grievance procedures exist, their utilization benefits the prisoner, the prison authorities and the courts." Willis, 506 F.2d at 1015. (Quote taken in part from footnote and part from body.)

## II. DUE PROCESS

### A. The Petition Does Not Raise Due Process Issues

An inmate who contends that actions of prison authorities violate his rights of due process must identify a liberty interest which is protected. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974); Meachum v. Fano, 427 U.S. 215, 223 (1976); and Sandin v. Conner, 515 U.S. 472, 483 (1995). In Sandin, the Supreme Court examined the earlier authorities, and articulated the standard to be applied by courts in determining whether the due process rights of prisoners were infringed. A court should determine whether the restraint imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483-484 (citations omitted).

In this case, Petitioner presents the following factors as constituting limitations on his freedom. The sex offender Public Safety Factor is assigned to individuals who "require increased security measures to ensure the protection of society." [Docket No. 14, Junk Decl., ¶ 3]. An inmate classified with a PSF as a Sex Offender must be housed in at least a "low security" level institution. [Docket No. 14, Ex. 3, PS 5100.07]. Thus, an inmate with a PSF is not eligible for placement in a Community Corrections Center ("CCC"), commonly referred to as a half-way house. Placement in a CCC is a prerequisite for successful completion of the BOP's Residential Drug Abuse Treatment Program ("RDAP"). See 28 C.F.R. § 550.58. Successful completion of the RDAP carries with it the possibility of a one-year sentence reduction. See 18 U.S.C. § 3621(e) Because inmates with PSF designations as Sex Offenders cannot participate in the CCC program they are subsequently ineligible for a one year sentence reduction under 18 U.S.C. § 3621(e).

The parties have not thoroughly briefed this issue. Petitioner relies upon Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997), but that case is factually dissimilar. In that case, the consequence of a decision by a state prison to label a prisoner as a sex offender was the requirement that he sign a document which stated: "I admit that I committed the offense(s) charged against me, and I agree to take full responsibility for my sexual behaviors [sic]." Id. at 822. It also required the prisoner to participate in "a twenty-five session psychoeducational treatment program in order to become eligible for parole." Id.

Respondents rely upon Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995), Knapp v. Nix, 577 F. Supp. 565 (S.D. Iowa 1983), aff'd without opinion, 754 F.2d 377 (8th Cir. 1984), and Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). These cases state

abstract legal statements which call in doubt the claim of a liberty interest under these circumstances, but they are also factually dissimilar.

We conclude that Petitioner has not met his burden of establishing that the assignment of the sex offender PSF had the effect of imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." His contention is that by assigning to him a sex offender PSF, the result is that he must be housed in at least a "low security" level institution, and is not eligible for placement in a half-way house. Placement in a halfway house is a prerequisite for successful completion of the BOP's Residential Drug Abuse Treatment Program ("RDAP") which would provide the possibility of a one-year sentence reduction. He thus loses the opportunity for the exercise of prison discretion in providing a one-year sentence reduction. These claims are similar to those rejected in similar circumstances. See Freitas v. Ault, 109 F.3d 1335, 1337-1338 (8th Cir. 1997)(no liberty interest in minimum security prison, 10 days administrative segregation, or higher paying job); Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669 (8th Cir. 1996)(no liberty interest in work release program); Moorman v. Thalacker, 83 F.3d 970, 973 (8th Cir. 1996)(no liberty interest in assignment to particular prison, nor to good time credits absent other factors).

The sex offender PSF was assigned to Petitioner in accordance with the BOP's Program Statement now numbered as 5100.07, Security Designation and Custody Classification Manual. Exhibit 3 to the Declaration of John M. Junk contains a recitation of some of the current Public Safety Factors A through M.[4] In this case, the Court is being

---

[4] A - None; B - Disruptive Group; C - Greatest Severity Offense; D, E - discontinued; F - Sex Offender; G - Threat to Government Officials; H - Deportable Alien; I - Sentence Length; J - discontinued; K - Violent Behavior; L - Serious Escape; M - Prison Disturbance.

asked to review the assignment of a PSF of "F - Sex Offender." We are unable to articulate a basis upon which the Court could review the assignment of this PSF, but decline to review all other PSF assignments to prisoners, and we are not persuaded that the assignment of these other factors raises due process concerns.

**B. <u>Petitioner Was Afforded Due Process</u>**

Even if the Court were to conclude that it was required that Petitioner be provided due process, we are satisfied on the record before us that Petitioner was afforded due process. The applicable regulation allows for assignment of a PSF as a Sex Offender according to the following guidelines:

> F. <u>Sex Offender</u> A male or female inmate whose behavior in the current term of confinement or prior history includes one or more of the following elements shall be housed in at least a Low security level institution, unless the PSF has been waived. *A conviction is not required for application of this PSF if the PSI [Pre-Sentence Investigation report], or other official documentation, clearly indicates the following behavior occurred in the current term of confinement or prior criminal history.* If the case was dismissed or nolle prosequi, application of this PSF cannot be entered. However, in the case where an inmate was charged with an offense that included one of the following elements, but as a result of a plea bargain was not convicted, application of this PSF should be entered.
>
> ***
>
> (4) *Any sexual act or contact not identified above that is aggressive or abusive in nature* (rape by instrument, *encouraging use of a minor for prostitution purposes,* incest). Examples may be documented by state or BOP incident reports, clear NCIC entries or other official documentation.

[Docket No. 14, Junk Decl., Ex. 3, PS 5100.07, Public Safety Factors and Management Variables, Ch. 7, p. 2 (9/3/99)].[5]

---

[5] The Program Statement number was changed on September 3, 1999 from PS 5100.06, chapter 6, page 6, example 4 to PS 5100.07, chapter 7, page 2, example 4. The Court has

We have highlighted the language in the BOP's Statement which shows that a PSF as a Sex Offender is assignable if the inmate's PSI "clearly indicates" that his prior history includes"a sexual act or contact that is aggressive or abusive in nature," such as "encouraging the use of a minor for prostitution purposes," and expressly states that a conviction is not required. These are precisely the facts in this case, as we have previously found.

In Polizzi v. Sigler, 564 F.2d 792, 793 (8th Cir. 1978), two prisoners were classified as "special offenders" under then-existing regulations, a classification for prisoners who present "special management problems," based on official documents which indicated a link to organized crime. Polizzi, 564 F.2d at 794. The Eighth Circuit concluded that the classification raised liberty interests in the form of "substantial burdens" on their opportunities to participate in community based rehabilitation programs and furlough programs, and that the label could impose a lasting stigma. Polizzi, 564 F.2d at 796. It concluded that due process concerns were thus raised. It held, however, that the process which was due was that which, at the time of the decision, was then required by the regulations: Notice to the inmate, a statement of reasons for the classification, and an opportunity to present evidence, which is likely to be documentary in form. Polizzi, 564 F.2d at 799.

We think it unlikely that the Court of Appeals would adhere to this decision as to liberty interests in light of the decision of the Supreme Court in Sandin v. Conner, 515 U.S. 472, 483 (1995), discussed earlier in this opinion. But even if it were to do so,

---

not been provided with the old program statement, but Respondents state that the substance remained unaffected and Petitioner does not challenge this point. [Docket No. 12, p. 13].

process beyond that approved in Polizzi would not be required. That process was afforded to Petitioner in this case. He was notified of the classification, and the reasons for it, he was afforded a full opportunity to present to the BOP the evidence he urged in support of his claim, he presented the evidence, and the BOP considered the evidence.

**III. ALL RESPONDENTS EXCEPT WARDEN STIFF SHOULD BE DISMISSED**

As a final matter, we note that the only appropriate respondent in a habeas corpus petition under 28 U.S.C. § 2241 is the Petitioner's custodian. See Braden v. 30th Judicial Circuit, 410 U.S. 484, 495 (1973); Blango v. Thornburgh, 942 F.2d 1487, 1492 (10th Cir. 1991) (finding that warden was the proper respondent in Section 2241 habeas action and dismissing United States Attorney General and director of Bureau of Prisons). In this case, that person is Warden R.L. Stiff of FCI-Waseca. Accordingly, even if the Court determines that this action should proceed, it should proceed only against the Warden, and all other Respondents should be dismissed.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 5] be denied, and the Petition dismissed with prejudice.

Dated: February 6, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before February 22, 2001 written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.