# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

MACK AL GREEN,

Civil No. 00-819 (JRT/JMM)

Petitioner,

v.

BUREAU OF PRISONS;
R.L. STIFF, Warden;
WENDY ROAL, Administrator;
PAM AGRIMSON, Case Manager;
D. TOMCHE, Unit Manager;
KATHERINE HAWK-SAWYER,
Director; and R. LAMMI, Counselor,

Respondents.

**ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

---

Mack Al Green, #08048-041, Federal Correctional Institution, Box 1500, Waseca, Minnesota 56093, *pro se*.

Jeffrey S. Paulsen, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for respondents.

Petitioner Mack Al Green ("Green") has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. In a Report and Recommendation dated February 6, 2001, United States Magistrate Judge John M. Mason recommended that this motion be denied, and the petition dismissed with prejudice. This matter is now before

FILED JAN [illegible]
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. JAN 2 9 2002
DEPUTY CLERK

the Court on Green's objections to the Report and Recommendation, and on his motion to reconsider this Court's Order denying appointment of counsel.[1]

The Court has conducted a *de novo* review of Green's objections pursuant to 28 U.S.C. § 636 (b)(1)(C) and D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court overrules Green's objections, and adopts the Report and Recommendation of the Magistrate Judge.

## BACKGROUND

Green is an inmate at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca"). He pleaded guilty to distributing cocaine base in violation of 21 U.S.C. § 841(a)(1), and on July 10, 1998 was sentenced to 70 months of confinement, followed by four years of supervised release. His projected release date is November 22, 2002.

When an inmate is assigned to FCI-Waseca or another federal prison, the prison must determine what level of security and custody is appropriate for that individual. To do this, the prison uses Bureau of Prisons Program Statement 5100.07, Security Designation and Custody Classification Manual ("BOP Program Statement"). Some federal inmates may be assigned a "public safety factor" ("PSF"), which is designed to ensure that inmates are placed in a facility with the appropriate level of security, based on the inmate's demonstrated past or present behavior. When considering whether to assign a PSF, prison officials review official documentation of the inmate's criminal history, including pre-sentence investigation reports prepared for sentencing.

[1] Green has also filed a petition for signature bond or home confinement pending consideration of his § 2241 petition. Because the Court is now ruling on the § 2241 petition, Green's request for temporary release is moot.

Green's prior criminal history was discussed in his pre-sentence investigation report, and included a state criminal charge, which was still pending, for receiving profit derived from prostitution. The documentation also noted that a minor was involved in this state crime.[2] Based on this information, officials at FCI-Waseca gave Green the PSF of "sex offender."

After the pre-sentence investigation report was created, defendant pleaded guilty to the state charges. The State of Minnesota originally charged Green under Minn. Stat. § 609.323, Receiving Profit Derived from Prostitution, Subdivision 1a. That subdivision criminalized receiving profit from prostitution of an individual "at least 16 but less than 18" years of age. Minn. Stat. § 609.323, subd. 1a (1988), *repealed by* Minn. Laws 1998, c. 367, art. 2, § 33. At Green's plea and sentencing, however, this charge was revealed to be a scrivener's error, and Green pleaded guilty instead to subdivision 2 of the same statute. Subdivision 2 made no mention of the prostitute's age.

## ANALYSIS

Green claims that he should not have been assigned the PSF as a sex offender, and seeks relief upon three grounds. In Ground One, Green asserts a denial of due process rights under the Fifth and Fourteenth Amendments. He states that he was labeled a sex offender even though he was not "convicted of a sexual offense." Green further asserts that he should have received a hearing, where he could present evidence. These alleged deprivations, Green claims, unconstitutionally deprive him of the right to early release under 18 U.S.C. § 3621(e). In Ground Two, Green asserts that he is denied Equal

[2] Specifically, the pre-sentence investigation report stated that Green arranged to prostitute a 16-year-old girl to an undercover police officer. *See* Rep. & Rec. at 2 n.1.

Protection of the Law, because Christians at FCI-Waseca are treated better than he, a Muslim, is treated. In Ground Three, Petitioner claims that renumbering of the BOP Program Statement violates the Ex Post Facto Clause of Article I, § 9 of the United States Constitution.

## I. Proper Respondents

As a preliminary matter, the Court notes the Magistrate Judge's correct determination that the warden of FCI-Waseca is the only appropriate respondent in this case. A writ of habeas corpus is properly directed upon a prisoner's custodian. *Braden v. 30th Judicial Cir. Ct. of Kentucky*, 410 U.S. 484, 494-95 (1973). Because Respondent R.L. Stiff, the warden of FCI-Waseca, is Green's present custodian, the Court finds it appropriate to dismiss from this action all named respondents other than Warden Stiff. *See Blango v. Thornburgh*, 942 F.2d 1487, 1491-92 (10th Cir. 1991).

## II. Exhaustion of Administrative Remedies

Because habeas corpus is an "extraordinary remedy," the writ is only available after a federal prisoner has exhausted available administrative remedies within the correctional system. *Willis v. Ciccone*, 506 F.2d 1011, 1014-15 (8th Cir. 1974) (stating that habeas corpus "should not be resorted to until other more conventional remedies have failed"). On Ground One, the Magistrate Judge correctly found that Green has exhausted all the available remedies within the BOP.

Green objects to the Magistrate Judge's determination that he did not exhaust his administrative remedies as to Grounds Two and Three of the petition. Green contends that pursuing these remedies would be futile. The Court disagrees. For example, Ground

Two alleges a violation of the Equal Protection clause based on Green's religion. Although Green has submitted some materials on this issue to the Court, he has not provided sufficient information for the Court to rule on the merits of his equal protection claim. *See Willis*, 506 F.2d at 1015 (stating that in seeking habeas corpus relief, a petitioner may not rely on conclusory pleading). Moreover, Green has stated that administrative review of Grounds Two and Three are already underway. *See* Petitioner's Supp. to Petition for Writ of Habeas Corpus [Docket No. 27]. The Court recognizes Green's concern that these proceedings should be conducted expeditiously. "The lapse of time between submission and disposition [of a prisoner's complaint] can render administrative relief inadequate." *Mason v. Ciccone*, 531 F.2d 867, 871 (8th Cir. 1976). Although Green has suggested that the BOP has delayed his administrative review, it is not clear that any delays have been unreasonable. In the absence of evidence that the BOP's delays deny Green "a real possibility for relief," the Court will not interrupt the agency's administrative review process. *See id.* Therefore, the Court declines to address the non-exhausted grounds in Green's petition, and they will be dismissed without prejudice.

## III. Due Process

Ground One of Green's petition, which alleges due process violations, is properly before the Court. Green objects to the Magistrate Judge's determinations that the petition does not raise due process issues, and that, in any case, Green was provided with due process in evaluating his complaint. The essence of Green's complaint is that he was unfairly designated as a "sex offender," and that this designation prevents him from being

released from prison early. An inmate with a "sex offender" PSF cannot be placed in a half-way house, which is a prerequisite for successfully completing the BOP's Residential Drug Abuse Treatment Program ("RDAP"). Inmates who successfully complete the RDAP are eligible for a one year sentence reduction under 18 U.S.C. § 3621(e).

To successfully prove a violation of his due process rights, Green must identify a liberty interest that is protected by the Due Process Clause of the United States Constitution. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). A "liberty interest" is freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In the present case, the Magistrate Judge correctly determined that Green has not identified any such liberty interest.

The "dispositive characteristic" of a liberty interest protected by the Due Process Clause "is the fact of release from incarceration." *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996). Although Green alleges that his release from incarceration is at stake, he must establish that he is suffering a deprivation that "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 487; *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996). § 3621(e), however, creates no such "mandatory scheme." *Moorman*, 83 F.2d at 973. The statute provides that the

> period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [substance abuse] treatment program **may** be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (emphasis added). Thus, just because an inmate completes the RDAP does not mean that the BOP must grant him early release. *Lopez v. Davis*, 531 U.S. 230, 239-41 (2001) (noting as significant Congress' use of "may" rather than "shall" in § 3621(e)). The BOP may exclude inmates from early release categorically or on a case-by-case basis. *Id.* Therefore, because § 3621(e) does not create "a mandatory scheme [that] necessarily affects the duration of a prisoner's sentence," the Court determines that Green has not identified a liberty interest protected by the Due Process Clause. *Moorman*, 83 F.3d at 973. On this basis alone, his petition may be dismissed.

The Court agrees with the Magistrate Judge that even if Green had identified a liberty interest protected by the Due Process Clause, the record shows that he received due process in reviewing his designation as a sex offender. The regulation that governs assignment of PSFs is BOP Program Statement 5100.07. As the Magistrate Judge noted, this rule provides that an inmate may be designated as a sex offender when any "official documentation" indicates that the inmate engaged in certain behavior. *See* BOP Program Statement 5100.07, Ch. 7 p.2 (Sept. 3, 1999). This behavior includes "encouraging use of a minor for prostitution purposes." *Id.* As the Magistrate Judge noted, Green's PSI clearly indicates that he engaged in this activity. Furthermore, the state court transcript which Green attached to his petition demonstrates that when he pleaded guilty to the crime of receiving profit derived from prostitution, he knew that the prostitute in question was a minor. Therefore, even if, as Green claims, he did not know that the prostitute was a minor when he engaged in the crime, he does not deny that the conduct took place. This fact, and its notation on Green's PSI, are sufficient grounds for the BOP to assign him the PSF.

To support his contentions, Green cites *Jones v. Stiff*, Civ. No. 00-494 (JMR/FLN) (D. Minn. Sept. 11, 2000). In that case, the Court granted the petitioner's request for a writ of habeas corpus, and ordered that the PSF classification of sex offender be removed from the petitioner's record. Although *Jones* and the present case both involve the sex offender PSF and Warden Stiff, the facts in the two cases are significantly different. In *Jones*, the petitioner was originally charged with Criminal Sexual Assault. *See Jones*, slip. op. at 2. That indictment, however, was later dismissed, and the petitioner was recharged with several non-sex-related offenses. The petitioner ultimately pled guilty to unlawful use of a weapon and unlawful restraint. Thus, the dismissed charge of sexual assault would have been the only indication of a sex-related crime in the petitioner's criminal history. BOP Program Statement 5100.07 specifically states, however, that the sex offender PSF cannot be applied based on a dismissed case. Therefore, the court determined that there was insufficient evidence in the record to conclude that the petitioner's criminal history clearly indicated illegal sexual activity. *Id.* at 4.

In the present case, no charges against Green were dismissed. Green confuses the issue by discussing his original – and erroneous – state charge of receiving profit derived from prostitution of a minor. Green suggests that the PSF is based on this mistaken charge, which was entered due to a scrivener's error. This suggestion, however, is misplaced. Green's PSF is actually based on information connected with the crime to which he pled guilty. Unlike in *Jones*, the charge to which Green pled guilty – receiving profit derived from prostitution – clearly indicates illegal sexual activity. The official documentation associated with this charge (the pre-sentence report) adds that a minor was involved. Therefore, the BOP was not acting arbitrarily or capriciously when it

determined that Green's prior criminal history clearly indicated circumstances warranting application of the PSF.

The Magistrate Judge correctly found that the BOP acted within its authority in assigning the PSF to Green, and that the BOP gave Green notice of his status and ample procedures to contest the classification. *See Polizzi v. Sigler*, 564 F.2d 792, 798-99 (8th Cir. 1977) (describing the procedures that are due to inmates who challenge their classifications). Therefore, the Court determines that Green's objections in this regard should be overruled.

## IV. Reconsideration of Appointment of Counsel

On September 28, 2001, this Court entered an Order denying Green's motion for appointment of counsel at government expense. In that order, the Court determined that the interests of justice do not require that counsel be appointed. In his motion to reconsider, Green has provided no information to change this determination. Accordingly, Green's motion to reconsider will be denied.

## ORDER

Based on the foregoing of all the records, files, and proceedings herein, the Court **OVERRULES** petitioner's objections [Docket No. 19] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 17]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioner's motion to grant relief pursuant to 28 U.S.C. § 2241 [Docket No. 5] is **DENIED**.

2. Ground One of petitioner's motion [Docket No. 5] is **DISMISSED WITH PREJUDICE**.

3. Grounds Two and Three of petitioner's motion [Docket No. 5] are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that:

1. Petitioner's Motion to Reconsider Appointment of Counsel at Government Expense [Docket No. 30] is **DENIED**.

2. Petitioner's Petition for Signature Bond or Home Confinement [Docket No. 32] is **DENIED**.

3. The following parties: Bureau of Prisons, Wendy Roal; Pam Agrimson, Case Manager; D. Tomche, Unit Manager; Kathleen Hawk-Sawyer; and R. Lammi, Counselor, are **DISMISSED** as respondents in this case.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: January 29, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.